UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| KANA ENERGY SERVICES, INC.<br>*Plaintiff*,<br>v.<br><br>THE UNITED STATES,<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)  Court No. 25-00186<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

Pursuant to Rule 3(a)(3) of the Rules of the United States Court of International Trade ("CIT"), Kana Energy Services, Inc. ("Kana" or "Plaintiff"), by and through its undersigned attorneys, alleges and states as follows:

**ADMINISTRATIVE DECISION TO BE REVIEWED**

1.  This is an appeal from U.S. Customs and Border Protection's ("CBP") final affirmative determination of evasion, issued under 19 U.S.C. § 1517(f), including its initial determination issued under 19 U.S.C. § 1517(c), pursuant to the Enforce and Protect Act ("EAPA") Consolidated Case Number 7890. This determination involved allegations of evasion of the antidumping (A-570-943) and countervailing (C-570-944) duty orders oil country tubular goods ("OCTG") from Thailand. *See Certain Oil Country Tubular Goods from the People's Republic of China,* 75 Fed. Reg. 20335 (Dep't Commerce Apr. 19, 2010) (final affirm. LTFV determ. & final affirm. determ. of critical circum. & targeting dumping), as amended in *Certain Oil Country Tubular Goods from the People's Republic of China,* 75 Fed. Reg. 28551 (Dep't Commerce May 21, 2010) (amended final affirm. LTFV determ. & order) ("AD Order")*; Certain Oil Country Tubular Goods From the People's Republic of China,* 74 Fed. Reg. 64045 (Dep't Commerce Dec. 7, 2009) (final affirm. CVD determ. & final negative determ. of critical circum.),

as amended in *Certain Oil Country Tubular Goods From the People's Republic of China,* 75 Fed. Reg. 3203 (Dep't Commerce Jan. 20, 2010) (amended final affirm. CVD. determ. & order) ("CVD Order").  CBP Trade Remedy & Law Enforcement Directorate ("TRLED") on February 24, 2025 ("TRLED Det.") determined that Plaintiff evaded the AD/CVD Orders when Plaintiff imported OCTG from the People's Republic of China ("China") into the United States by "undervaluation, misclassification, and transshipment through Thailand." TRLED Det. at 2. And CBP Office of Trade, Regulations & Rulings' ("RR") administrative review decision ("RR Decision") dated July 2, 2025 affirmed TRLED's final determination.

## PARTIES

2. Kana was incorporated on December 16, 2008, with an office in Houston, TX and acts as an importer of record of OCTG (*i.e.* alleged "covered merchandise") from one Thai producer, Thai Oil Pipe Co., Ltd. ("TOP").

3. Plaintiff was named and targeted by CBP in the EAPA Investigation No. 7890 (hereinafter, "EAPA 7890"). Plaintiff, as an importer, is thus an interested party in accordance with 19 U.S.C. § 1517(a)(6)(A)(i).

4. Defendant is the United States of America, acting by and through CBP.

## JURISDICTION

5. Plaintiff brings this action pursuant to Section 517(g) of the Tariff Act of 1930, as amended by the Trade Facilitation and Trade Enforcement Act of 2015 ("TFTEA").

6. Plaintiff Kana is commencing this action in accordance with 19 U.S.C. § 1517(g)(1), which provides for judicial review by the U.S. Court of International Trade of TRLED's final determinations under 19 U.S.C. § 1517(c) and RR's administrative review determinations under 19 U.S.C. § 1517(f)(1).

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), because this appeal is taken pursuant to 19 U.S.C. § 1517 within 30 business days of the date of the July 2, 2025 RR Decision.

## STANDING

8. Kana is a "person determined to have entered . . . covered merchandise through evasion" and therefore has standing to bring this action in accordance with 19 U.S.C. § 1517(g)(1). Kana participated in the EAPA investigation including filing an administrative appeal to RR. Kana is an interested party with the meaning of 19 U.S.C. § 1517(a)(6).

9. Further, following CBP's interim measures and subsequent affirmative determination as to evasion, Plaintiff is subject to antidumping and countervailing duties on entries covered by the EAPA investigation time frame and is therefore adversely affected or aggrieved by agency action within the meaning of section 702 of the Administrative Procedure Act, as amended, 5 U.S.C. § 702. Accordingly, Plaintiff Kana has standing to commence this action pursuant to 28 U.S.C. § 2631(i).

## TIMELINESS OF THIS ACTION

10. RR issued a Final Administrative Determination on July 2, 2025. This Complaint and the concurrently filed summons are timely because they are being filed within 30 business days after the completion of CBP's review, completed on July 2, 2025. The thirtieth business day after July 2, 2025 (excluding Saturdays, Sundays, and federal holidays) falls on Thursday, August 14, 2025.

11. Plaintiff has also adhered to all service and notification requirements as set out by Rules 3 and 4 of the U.S. Court of International Trade. Accordingly, Plaintiff has commenced this action with the statutorily-prescribed time limits specified in 19 U.S.C. § 1517(g)(1).

## STANDARD OF REVIEW

12. The standard of review set forth in 19 U.S.C. § 1517(g)(2) provides:

> In determining whether a determination under subsection (c) or review under subsection (f) is conducted in accordance with those subsections, the United States Court of International Trade shall examine—
> (A) whether the Commissioner fully complied with all procedures under subsections (c) and (f); and
> (B) whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## STATEMENT OF FACTS

13. On January 18, 2024, and February 1, 2024, the U.S. OCTG Manufacturers Association ("USOMA" or the "Alleger"), a trade association of domestic producers of OCTG, submitted allegations to CBP that Kana and other importers were evading the AD/CVD Orders on OCTG from China. Letter from the Alleger, "Oil Country Tubular Goods from China: Request for an Investigation under the Enforce and Protect Act" (Jan. 18, 2024) (collectively, the "Allegations"); *see also* TRLED Det. at 2 n.3.

14. The Alleger claimed that Kana, along with the other importers, were importing Chinese-origin OCTG that was transshipped through Thailand, and on February 1, 2024, CBP acknowledged receipt of the Allegations. *Id.* at 3. Subsequently, TRLED initiated the EAPA investigation against Kana and the other importers on February 23, 2024. TRLED Memorandum, Initiation of Investigation for EAPA 7890-7898 and 7954 (Consolidated Case 7890) (Feb. 23, 2024) ("EAPA 7890 Initiation").

15. After the initiation of the investigation, TRLED issued CBP Form 28 ("CF-28") questionnaires to Kana and each of the importers concerning the entries of OCTG and requested supporting documentation. Each of the importers submitted a CF-28 response concerning its

respective entry from Petroleum Equipment (Thailand) Co., Ltd. ("PET") or TOP on the following dates: Kana, on April 4, 2024; Amek Aluminum & Stainless, Inc. ("Amek"), on March 21, 2024; Centric Pipe LLC ("Centric Pipe") and TSPGA LLC ("TSPGA"), on April 2, 2024; Copley International Group Co Ltd ("Copley") and Energy Pipe & Equipment Rentals LLC ("Energy Pipe"), on April 3, 2024; Longfellow Energy, LP ("Longfellow") and Trek Metals Inc ("Trek Metals") on April 5, 2024; and LE Commodities, LLC ("LE Commodities") and Lixin Energy Group (HK) Co., Limited ("Lixin Energy") on April 10, 2024.  TRLED Det. at 3 n.9.

16. After evaluating the information on the record, on May 31, 2024, TRLED determined that reasonable suspicion existed that Kana and the other importers imported Chinese-origin OCTG into the U.S. that had been transshipped through Thailand.  Letter from TRLED, Notice of Initiation of Investigation and Interim Measures - EAPA Cons. Case 7890 (May 31, 2024) ("NOI").  As part of interim measures, CBP suspended the importers' entries that entered after the initiation of the investigation pursuant to its authority under 19 U.S.C. § 1517(e). *Id.* at 27.

17. TRLED then issued requests for information ("RFI") to Kana, the other importers, and to PET and TOP, to which all parties responded except for Copley and Lixin Energy. TRLED Det. at 5.  On July 26, 2024, TRLED extended the final determination regarding evasion until February 18, 2025.  *Id.* at 5-6.  Additionally, on August 26, 2024, CBP issued a supplemental request for information to Kana, which Kana filed a robust response to on September 16, 2024.  Kana's Response to Supplemental Request for Information (Sept. 16, 2024) ("Kana Supplemental RFI").

18. CBP officials conducted on-site verification in Thailand at TOP's facility from October 28, 2024, to November 1, 2024, and at TOP's facility from November 4, 2024, to

November 7, 2024.  TRLED, On-Site Verification Report, in EAPA Case Number: 7890 (Dec. 5, 2024) ("On-Site Verification Report").  TRLED also added two memoranda to the record with additional documentation.  TRLED Memorandum, Adding Information to the Administrative Record of EAPA 7890 (Nov. 25, 2024); TRLED Memorandum, Adding Information to the Administrative Record of EAPA 7890 (Nov. 27, 2024).

        19. In its verification report, CBP noted that it observed that the factory workers at TOP were "actively participating in various production processes" during the factory tour, that the workers operating machinery who were interviewed "were able to demonstrate their knowledge of the machinery and showed example records that were produced from their test", and that "the factory was covered in steel debris and dust, which is indicative of a factory that operates regularly." On-Site Verification Report at 22-23.

        20. According to the verification report, CBP observed both mechanical and other testing conducted on the OCTG being produced by TOP during the factory tour, and both the sample and the pipe passed the product testing – again confirming TOP's capabilities to produce OCTG. *Id.* at 24-26. CBP also noted in its verification report that it requested and was granted access to TOP's production records during its on-site visit, as well as access to TOP's accounting system and sales ledger which "showed all sales to the importers." *Id.* at 24-27

        21. While the record shows that a majority of TOP's imports were of mother pipe (hollow pipe), TOP also imported a significant volume of billet for its OCTG production.  On-Site Verification Report at 22-23.

        22. On December 19, 2024, Kana, the Alleger, and the other importers additionally submitted written arguments, and on January 3, 2025, and January 6, 2025, parties submitted responses to the written arguments.  TRLED Det. at 6 n.23.

23.     Kana presented the following arguments before TRLED issued its final determination. First, even if CBP made certain adverse inferences and found that TOP did sell some covered merchandise that was of China origin, TOP's submissions and the on-site verification report did not demonstrate that the OCTG it sold to Kana was the same China-origin OCTG and is therefore not supported by substantial evidence.  Second, Kana showed reasonable care through rigorous review of documentation and other sources that the OCTG it imported was produced in Thailand. Third, there was no evidence that Kana presented any material or false statement, act, or omission that would result in EAPA liability.  Finally, CBP's EAPA procedures violate due process by listing Kana's name in a public pleading when such references are clearly business confidential information. Letter from Kana, "Kana Energy Services Inc.'s Written Arguments" (Dec. 19, 2024) ("Kana Written Arguments").

24.     CBP's final determination was due on February 18, 2025, per its extension of the Final Determination.  TRLED Det. at 5-6 n.20.  Per 19 C.F.R. § 165.27(b), CBP must notify parties to the proceeding of its final decision within five business days, in this case, CBP issued its Notice of Determination on February 24, 2025, finding that substantial evidence on the record indicated that Kana and the other importers entered Chinese-origin OCTG through evasion.  *See generally*, TRLED Det.

25.     On April 7, 2025, Kana, along with five other parties, filed a *de novo* request for review with RR.  *See* Investigation Concerning Evasion of the Antidumping and Countervailing Duty Orders on Oil Country Tubular Goods from China; EAPA Consolidated Case Number 7890: Kana Energy Services, Inc.'s Request for Administrative Review (April 7, 2025) ("Kana's Review Request"); RR Decision at 2.

26.     On April 9, 2025, RR emailed the parties to notify them of commencement of administrative review process and the assignment of case number, H346715.

27.     On April 23, 2025, Schagrin Associates filed a response to the administrative review requests on behalf of the USOMA filed a response in opposition to the importers' request for administrative review.

28.     On July 2, 2025, RR issued its decision affirming the February 24, 2025, determination under 19 U.S.C. § 1517(c). RR Decision at 28.

## STATEMENT OF CLAIMS

29.     TRLED's February 24, 2025 Determination and the July 2, 2025 RR Decision are arbitrary, capricious, an abuse of discretion, not supported by substantial evidence or otherwise not in accordance with law in the following respects:

### COUNT 1

30.     The facts and allegations contained in paragraphs 1 through 29 are restated and incorporated herein by reference.

31.     In reviewing an EAPA determination, the Court also must determine "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1517(g)(2)(B). "An abuse of discretion occurs {when} the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Royal Brush Mfg., Inc. v. United States*, 483 F. Supp. 3d 1294, 1302 (Ct. Int'l Trade 2020) (quoting *Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005)).

32. The record demonstrates that TOP purchased input materials for its production of OCTG in Thailand. During verification, TOP provided CBP with requested documentation showing some shipments of OCTG to the United States had been produced in Thailand using imported billets. The record contains no evidence that Kana directly imported covered merchandise that was not produced by TOP in Thailand from steel billets.

33. Additionally, CBP's conclusion that "the finished OCTG that contained Chinese 'mother pipe,' which Energy Pipe, Kana, and Trek Metals imported into the United States are 'covered merchandise'" is not supported by substantial evidence.

34. In the final determination, TRLED comes to multiple conclusions regarding TOP's production of OCTG and later imported by Kana, which are not supported by substantial evidence.

## COUNT 2

35. The facts and allegations contained in paragraphs 1 through 34 are restated and incorporated herein by reference.

36. To reach an affirmative determination as to evasion, EAPA requires that CBP find that the entry in question was made by a material false statement or act or material omission.

37. The evidence presented in the Determination does not constitute substantial evidence that Kana presented any material or false statement, act, or omission that would result in EAPA liability.

38. Before reaching a determination of evasion, CBP must confirm that an entry was made by a material false statement or act, or by a material omission. 19 C.F.R. § 165.1; 19 U.S.C. § 1517(a)(5)(A). The CIT has held that a degree of *culpability* is required for such a finding, specifically rejecting the concept of EAPA as a strict liability statute. *Diamond Tools*

*Technology LLC v. United States*, 545 F. Supp. 3d 1324, 1355 (Ct. Int'l Trade 2021); *Diamond Tools Technology LLC v. United States*, 609 F. Supp. 3d 1378, 1388 n.10 (Ct. Int'l Trade 2022).

39. The submission of an accurate internal record that happened to differ from non-binding, outdated, and unofficial online listings does not constitute a false statement, a material omission, or an attempt to conceal material facts under 19 C.F.R. § 165.6 or 18 U.S.C. § 1001.

40. CBP also did not provide explanation as to how an inadvertent error by Kana in its tax returns demonstrate a materially false statement that results in evasion of an antidumping duty order. CBP's determination is based on pure speculation, is contrary to record evidence before the agency, is thus arbitrary and capricious and in violation of 19 U.S.C § 1517(g)(2)(A) and 5 U.S.C. § 706.

41. In the final determination, TRLED comes to multiple conclusions regarding Kana giving false information or making false statements, all of which are not supported by substantial evidence.

## COUNT 3

42. The facts and allegations contained in paragraphs 1 through 41 are restated and incorporated herein by reference.

43. TRLED and RR explicitly invoked the adverse inferences provisions in 19 U.S.C. § 1517(c)(3) and 19 C.F.R. § 165.6.

44. CBP's application of adverse inferences against Kana in its final determination was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, because CBP unlawfully interpreted and applied such provision. 19 U.S.C. § 1517(g)(2)(B) and 5 U.S.C. § 706.

45. "If the Commissioner finds that a party . . . or person . . . has failed to cooperate by not acting to the best of the party or person's ability to comply with a request for information, the Commissioner may, in making a determination {of evasion} . . . , use an inference that is adverse to the interests of that party or person in selecting from among the facts otherwise available to make the determination." 19 U.S.C. § 1517(c)(3)(A). *See also* 19 C.F.R. § 165.6(a).

46. "The 'best of its ability' standard compels respondents to take reasonable steps to keep and maintain complete records that they would reasonably be called upon to produce in an antidumping investigation." *Diamond Sawblades Mfrs.' Coal. v. United States*, 415 F. Supp. 3d 1365, 1372 (Ct. Int'l Trade 2019) (quoting *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382-84 (Fed. Cir. 2003)).

47. The adverse inferences provision, as applied by CBP, deprived the investigated party of notice as to what information is missing and opportunity to redress the missing information before a final determination is reached, violating the party's right to a meaningful and fair proceeding.

48. In the investigation, Kana cooperated fully and to the best of its ability with CBP. CBP's application of adverse inference due to material and false statements is unsupported by record evidence and is arbitrary and capricious.

## COUNT 4

49. The facts and allegations contained in paragraphs 1 through 48 are restated and incorporated herein by reference.

50. CBP's final determination does not support a finding of evasion as to the products imported by Kana with substantial evidence.

51. CBP's regulations require all importers to "exercise reasonable care in fulfilling their responsibilities involving entry of merchandise," including "taking measures that will lead to and assure the preparation of accurate documentation, and determining whether any applicable requirements of law with respect to these issues are met." 19 C.F.R. Pt. 171, App. B(D)(6).

52. In the investigation, the record established that Kana exercised reasonable care in verifying TOP as a supplier prior to importing the OCTG at issue and properly entered all merchandise as Thailand as the country of origin as a result.

53. Based on the information CBP gathered during verification and TOP's submissions, the record does not demonstrate Kana specifically purchased anything other than Thai origin products. TOP's submissions and the on-site verification report do not demonstrate that the OCTG TOP sold to KANA was specifically China-origin OCTG and is therefore not supported by substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to:

(a)      Hold that CBP's TRLED Determination and RR Decision are arbitrary, capricious, an abuse of discretion and are otherwise not in accordance with law;

(b)      Declare TRLED's and RR's final determinations unsupported by substantial evidence;

(c)      Order CBP to liquidate Kana's entries of OCTG imported from TOP in Thailand without the addition of antidumping or countervailing duties; and

(d)      Grant such additional relief as the Court may deem just and proper.

                                                     **/s/ John M. Gurley**
                                                     John M. Gurley
                                                     Katherine R. Afzal

                                                     ArentFox Schiff LLP
                                                     1717 K Street NW
                                                     Washington, D.C. 20006-5344
                                                     Telephone: (202) 857-6301

                                                     *Counsel to Kana Energy Services, Inc.*

Dated: August 14, 2025